# United States Court of Appeals
# for the Fifth Circuit

———————

No. 25-20242

———————

United States Court of Appeals
Fifth Circuit

**FILED**
March 25, 2026

Lyle W. Cayce
Clerk

ANETRYS MOTEN, *Individually and as next friend of* T.T.,

*Plaintiff—Appellant*,

*versus*

UNION PACIFIC RAILROAD COMPANY; UNION PACIFIC CORPORATION,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-1320

———————————————————

Before HAYNES, HIGGINSON, and HO, *Circuit Judges*.

PER CURIAM:[*]

This case arises from a sad accident in which Anetrys Moten's minor son ("T.T.") attempted to cross railroad tracks and a train ran over and amputated T.T.'s leg (he survived). Union Pacific Railroad Company ("UPRC") owned and operated both the railroad tracks and the train. Moten filed suit, alleging negligence, gross negligence, and premises liability.

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 25-20242

The district court granted summary judgment and dismissed Moten's claims. We AFFIRM.

## I.   Background

On September 26, 2021, a UPRC freight train came to a brief stop on railroad tracks near a former street crossing in Hearne, Texas, because a signal briefly showed "red," for which the train was required to stop. A nearby laundromat's video camera recorded the subsequent accident.

T.T., who lived near the railroad tracks, admits that he was aware that going through trains could be dangerous. Nonetheless, he and a friend approached the train as it slowed down, intending to cross the tracks to go to a convenience store. As the train came to a stop, T.T. and his friend began to attempt to cross between two train cars to get to the other side of the train. T.T.'s friend made it onto the other side of the train unscathed. However, as T.T. was crossing between the two train cars, the freight train lurched forward, as "slack action"[1] quickly pulled the cars forward. During this return to moving, T.T. fell onto the train tracks and the wheels of the train rolled over T.T.'s leg.

Moten filed suit against Union Pacific Corporation ("UPC" and, together with UPRC, the "Union Pacific Entities"), UPRC, and the City of Hearne, Texas, in the 125th Judicial District Court of Harris County, Texas, asserting claims for negligence, gross negligence, and premises liability. Moten nonsuited her claim against the City of Hearne, leaving her claims for negligence and gross negligence against the Union Pacific Entities. The Union Pacific Entities removed to the federal district court based on

---

[1] As the Supreme Court once explained, "[s]lack action is the amount of free movement of one car before it transmits its motion to an adjoining coupled car." *S. Pac. Co. v. Ariz. ex rel. Sullivan*, 325 U.S. 761, 776 (1945).

diversity jurisdiction, and the district court denied Moten's motion to remand.

The Union Pacific Entities moved for summary judgment, which Moten opposed. The district court granted summary judgment against Moten, reasoning that Moten's negligence theories sounded in premises liability, and UPC owed no duty to T.T. under Texas law. The district court also concluded that railroad tracks are open and obvious dangers under Texas law, UPRC owed T.T. no duty to warn or make safe its train or tracks, and thus Moten's claims against UPRC failed. Moten timely appealed.

## II.    Jurisdiction & Standard of Review

The district court had diversity jurisdiction over this removal case. 28 U.S.C. § 1332(a). The district court entered a final judgment, and we have jurisdiction over this appeal under 28 U.S.C. § 1291.

We review a district court's grant of summary judgment de novo and apply the same standard as the district court. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (per curiam). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Austin*, 864 F.3d at 328–29. "We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001) (citation omitted).

## III.    Discussion

Moten contends that the district court erred for four reasons. First, the district court erroneously identified the "condition at issue" as UPRC's

train writ large, rather than the hidden danger of slack action suddenly pulling train cars. Second, even if the district court properly identified the condition at issue, multiple physical factors obscured the train's danger. Third, the district court improperly applied an adult, "reasonably prudent person" standard and should have instead applied a child standard of care, where T.T. was a fourteen year old with an intellectual disability, and UPRC was aware that children regularly trespassed on its tracks and trains. Fourth, UPRC had actual knowledge of regular trespasses on its tracks and trains and understood slack action was a hidden danger, but "failed to implement basic trespass-mitigation measures." We conclude that the key to all of this is whether T.T. was appropriate in his crossing.

Moten does not challenge summary judgment on her claims against UPC,[2] leaving only her negligence and gross negligence claims against UPRC. As to the former on UPRC, we note that, "[u]nder Texas law, 'a person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner,' but not both." *Barron v. United States*, 111 F.4th 667, 671 (5th Cir. 2024) (quoting *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016)). "Whether a person injured on another's property has a general negligence claim or a premises liability claim depends on the factual circumstances of the case." *Id.* (citing *Jenkins*, 478 S.W.3d at 644). We agree with the district court that, in the "factual circumstances of th[is] case," Moten's negligence claim sounds in premises liability. *Id.*; *see also Jenkins*, 478 S.W.3d at 644 ("When the injury

---

[2] Accordingly, we affirm the judgment as to UPC.

is the result of the property's condition rather than an activity, premises-liability principles apply." (citation omitted)).[3]

To prevail on a premises liability claim under Texas law, the plaintiff must show:

> (1) that the defendant had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm to the plaintiff; (3) that the defendant did not exercise reasonable care to reduce or to eliminate the risk; and (4) that the defendant's failure to use such care proximately caused the plaintiff's personal injuries.

*United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017) (citation modified). "[A] defendant in a premises case is liable only to the extent it owes the plaintiff a legal duty." *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008) (citations omitted). As Moten acknowledges, "since there is no need to warn against obvious or known dangers, a landowner generally has no duty to warn of hazards that are open and obvious or known to [an] invitee." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 204 (Tex. 2015) (citations omitted). "Whether a danger is open and obvious is a question of law determined under an objective test," per which "the question is not what the plaintiff subjectively or actually knew but what a reasonably prudent person would have known under similar circumstances." *Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 788 (Tex. 2021) (citations omitted). To "properly apply" this test, "we must consider the totality of the particular circumstances the plaintiff faced." *Id.* at 788–89 (citation modified).

---

[3] Moten does not challenge the district court's premises liability characterization on appeal.

No. 25-20242

We agree with the district court that, looking at "the totality" of these "particular circumstances," a "reasonably prudent person would have known under similar circumstances" of the open and obvious danger posed by UPRC's train and railroad tracks.[4] *Id.* (citation modified). Texas courts have long treated trains and railroad tracks as obvious sources of danger.[5] Further, while we view the evidence in the light most favorable to Moten, *see Austin*, 864 F.3d at 328–29 (citation omitted), as Moten concedes, and as is reflected in the video footage, UPRC's train was stopped for only a matter of seconds before T.T. and his friend attempted to cross it. The video footage demonstrates that the accident took place on a clear day, and T.T. saw first-hand that the specific train involved in the accident was moving

_____

[4] While Moten contends that the proper focus for the open and obvious inquiry here should be "slack action," rather than the train itself, as discussed below, T.T. himself testified that he recognized the danger posed by climbing through a train's cars prior to the accident. *See infra* n.6. Moreover, though Moten is correct that the Supreme Court of Texas has discussed undetectable danger in an open and obvious analysis under "particular circumstances" (i.e., where "the *presence* of [a] power line was open and obvious," but "the fact that the power line was energized" was not), *Valdez*, 622 S.W.3d at 789, in this matter her arguments frame the inquiry too narrowly, *cf. City of Waco v. Kirwan*, 298 S.W.3d 618, 624 (Tex. 2009) (explaining that "[a] cliff . . . is the sort of dangerous natural condition that both a landowner and recreational user could foresee would pose a risk," and, "even assuming that the particular risk at the cliff's edge—the alleged crumbling of a large section of the cliff—was not necessarily foreseeable, the general risk of a cliff's edge is" (citation omitted)).

[5] *See, e.g.*, *Tex. & N. O. R. Co. v. Burden*, 203 S.W.2d 522, 529 (Tex. 1947) ("All men in possession of their faculties are charged with knowledge that a railroad track is a dangerous place, and the law will not permit them to go upon the track, . . . without being charged with a recognition of the danger attending such action . . . ." (citation omitted)); *McBeth v. Tex. & Pac. Ry. Co.*, 414 S.W.2d 45, 49–50 (Tex. App. 1967, writ ref'd n.r.e.) (collecting cases and noting same); *Higginbotham v. Int'l-Great N. R. Co.*, 99 S.W.2d 338, 340 (Tex. App. 1936, writ dism'd) ("*A railroad track is of itself a proclamation of danger*, imposing upon the traveler at the railroad crossing a positive duty of using care to avoid trains." (emphasis added) (citation omitted)).

mere moments before his attempt to cross it.[6] Therefore, we hold that the district court did not err in concluding that UPRC owed T.T. no duty to warn of, or make reasonably safe, the open and obvious danger posed by its train or railroad tracks.[7] *See Austin*, 465 S.W.3d at 204. Moten's claim accordingly fails. *See Moritz*, 257 S.W.3d at 217.

As a result of failing to show negligence, we also affirm Moten's gross negligence claim. The Supreme Court of Texas has explained that, "[a]s with negligence actions, . . . a defendant may be liable for gross negligence only to the extent that it owed the plaintiff a legal duty." *City of Waco v. Kirwan*, 298 S.W.3d 618, 623 (Tex. 2009) (citations omitted). As discussed above, UPRC owed T.T. no duty to warn of, or make reasonably safe, the open and obvious danger posed by its train or railroad tracks. The district court thus appropriately granted summary judgment on this claim.

---

[6] Indeed, while Moten avers that T.T. "had repeatedly crossed stopped trains without incident," we note that T.T. testified that he was aware of problems if he crossed. For instance, T.T. had previously cut across the railroad tracks between ten and twenty times. Regarding a prior incident, T.T. stated that he "just so happened to stop in front of the train and [he] noticed it," that "it wouldn't move at all," and that, after waiting for a short time, he "took it into [his] own hands," throwing a bike he had over the gap between two connecting train cars and crawling "under the train." As T.T. explained, "next thing, [he] got from under the train and the train start[ed] moving." T.T. thus had direct experience, before the accident, seeing a stopped train starting to move in close proximity to an attempt to cross under it. Likewise, T.T. answered "[y]es" to the question, "[s]ince th[at previous incident], but prior to the accident, did [he] understand that either climbing under a train or through a train could be dangerous?" So, again, he was well aware of dangerousness even at his age of fourteen years old.

[7] The parties dispute whether T.T. was a licensee or trespasser. However, we agree with the district court that, regardless of T.T.'s status, UPRC did not owe T.T. a duty to warn of the open and obvious danger posed in these circumstances. Indeed, on appeal Moten frames this issue as relevant only "if" we were to decide "that the hidden danger of slack action was not open and obvious," which we do not. *See also Austin*, 465 S.W.3d at 204 (noting open and obvious rule applies to invitees).

No. 25-20242

## IV.    Conclusion

For the foregoing reasons, we AFFIRM the district court's summary judgment order.